# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF MICHIGAN
# SOUTHERN DIVISION

THE UNITED STATES OF AMERICA,         No: 19-20256

        Plaintiff,            Hon. Robert H. Cleland

v.

D-1   LASZLO CSIKI,

        Defendant.
_____/

## GOVERNMENT'S SENTENCING MEMORANDUM

The government recommends that the Court impose sentences of 24 months on Counts Two and Three to run consecutively, for a total term of imprisonment of 48 months.

### I.   STATEMENT OF FACTS

From approximately 2017 to 2019, Defendant placed skimming devices and cameras on ATMs. Defendant's skimmers and cameras harvested personal identifying information (PII), such as credit card numbers, debit card numbers, and associated pin numbers. Defendant used this information to withdraw money from bank accounts in Michigan and elsewhere.

On April 13, 2019, law enforcement arrested Defendant in his car, acting as a lookout while his co-defendant, Laszlo Gyorgy, approached an ATM. (PSR ¶ 12.) Defendant was in possession of $35,500 in cash and 292 gift cards encoded with stolen credit card information. (PSR ¶ 14.) At his arrest, Defendant provided false identification to the police. He told police that he was R.W.G., a New York resident and victim of identity theft. Defendant presented a false Michigan enhanced driver's license in the name of R.W.G. The investigation later determined that Defendant had used R.W.G.'s identity to obtain a social security card and Michigan driver's license, to establish a mailbox at UPS, and open a bank account.

A subsequent search of Defendant's residence recovered an additional $95,332 in cash and 330 fraudulent credit cards, as well as counterfeit access device components and related materials. (PSR ¶ 17.) A search of a storage unit rented by Gyorgy recovered $22,480 in cash and receipts for clothing purchased in the name of Defendant's alias, R.W.G.

Although Defendant refused to provide his name to law enforcement at his arrest, he eventually provided the name Laszlo Csiki. The government has confirmed that Canada has a record of an individual

2

entering that country using the name Laszlo Csiki. The government believes that this is the identity that Defendant used to enter Canada, where he resided for several years before illegally entering the United States. The FBI has also asked the government of Romania to confirm Defendant's identity, and the Romanian authorities responded that they do not have record of anyone named "Laszlo Csiki."

On April 23, 2019, Defendant was charged in a four-count indictment with access device fraud, possession of device-making equipment, and aggravated identity theft. Defendant was listed in the indictment as FNU LNU, a/k/a R.W.G. On October 17, 2019, the grand jury returned a superseding indictment changing Defendant's name from FNU LNU to Laszlo Csiki. On October 23, 2019, Defendant entered a guilty plea pursuant to a Rule 11 Plea Agreement to possession of device-making equipment and aggravated identity theft.

## II. SENTENCING GUIDELINES CALCULATION AND RELEVANT 3553(a) FACTORS

18 U.S.C. § 3553(a) provides the relevant objectives and factors to be considered by sentencing courts when determining a "sentence sufficient, but not greater than necessary." Those objectives are: (1) the nature and circumstances of the offense, and the history and

3

characteristics of the defendant; (2) the need for a sentence to reflect the basic aims of sentencing (including retribution, deterrence, incapacitation and rehabilitation); (3) the kinds of sentences legally available; (4) the Sentencing Guidelines; (5) Sentencing Commission policy statements; (6) the need to avoid unwarranted sentencing disparities among defendants with similar records who have been found guilty of similar conduct; and (7) the need for restitution. The most relevant factors to Defendant's case are discussed below.

### *The Sentencing Guideline Calculation*

The applicable guideline range "should be the starting point and the initial benchmark" for choosing a defendant's sentence. *Gall v. United States*, 552 U.S. 38, 49 (2007). In the plea agreement, the parties calculated Defendant's advisory guideline range for Count Two to be 24 to 30 months, based on a loss amount of more than $150,000, but less than $250,000. The Probation Department has concluded that the loss amount is $529,589.00, and accordingly, found that the applicable guideline range for Count Two is 30 to 37 months. (PSR ¶ 70, 72-73.)

Count Three requires a mandatory, consecutive 24-month sentence.

### *Nature and Circumstances of the Offense, and the History and Characteristics of the Offender, 18 U.S.C. § 3553(a)(1)*

Defendant came to the United States without legal status. He likely used fraudulent identification documents to enter Canada, and then arranged an illegal border crossing via boat to a Native American reservation in New York. Most importantly, Defendant did not come to the United States to be close to family, to find a job, or to make a better life for himself. Instead, he came here to commit extensive financial crimes and send the money back home to his family in Romania.

During his time in the United States, Defendant stole PII from hundreds of victims so that he could then take money directly from their bank accounts. When he was arrested, Defendant lied about his identity and gave police fraudulent identification documents. Defendant persisted in his lies about his identity and refused for months to give his real name. The name he finally provided—Laszlo Csiki—may still be fake.

Determining the amount of loss caused by Defendant and Gyorgy is difficult. Identifying account compromises is very difficult and involves a painstaking process. Defendants took extensive steps to evade detection by concealing their faces and obscuring ATM cameras. Defendant also targeted banks in different jurisdictions, to make it more

difficult for police to connect him to his crimes. Ultimately, Defendant was arrested with 293 cards that contained victim bank account information. This likely represents a small sliver of the total ATM breaches and account compromises that Defendant has committed while in the United States.

### *Seriousness of the Offense, Promoting Respect for Law, and Providing Just Punishment, 18 U.S.C. § 3553(a)(2)(A)*

The need for the sentence imposed to reflect the seriousness of the offense, promote respect for the law, and provide just punishment are factors that weigh in favor of a significant custodial sentence.

### *Deterrence; 18 U.S.C. § 3553(a)(2)(B)*

The above considerations impact another § 3553(a) factor – the need to deter such conduct in the future. Sentencing in the federal system has long contemplated the ability to provide both specific and general deterrence. *United States v. Phinazee*, 515 F.3d 511 (6th Cir. 2008); *United States v. Blackwell*, 459 F.3d 739, 774 (6th Cir. 2006). Both specific and general deterrence are important here. Because Defendant entered this country illegally, he presents a risk to return to commit the same crimes. In addition, there are many other individuals committing the same crimes as defendant in this area, or considering coming from

overseas to commit these crimes. A significant custodial sentence is necessary to send a message to Defendant's network of associates in Romania.

### III. <u>CONCLUSION</u>

The United States requests that the Court impose sentences of 24 months on Counts Two and Three to run consecutively, for a total term of imprisonment of 48 months.

Respectfully Submitted,

MATTHEW SCHNEIDER
United States Attorney

<u>/s Sara D. Woodward</u>
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan 48226-3211
Date: October 31, 2019	(313) 226-9180

## **CERTIFICATE OF SERVICE**

I hereby certify that on February 25, 2020, I electronically filed the foregoing document with the Clerk of the Court using the ECF system which will send notification of such filing to counsel of record.

/s/ Sara D. Woodward
Assistant United States Attorney
211 West Fort Street, Suite 2001
Detroit, Michigan  48226-3211
(313) 226-9180
sara.woodward@usdoj.gov

Date: February 25, 2020