UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

UNITED STATES OF AMERICA,

    Plaintiff/Respondent,

Criminal Case No. 3:19-cr-20256
Civil Case No. 3:21-cv-13019

District Judge Robert H. Cleland
Magistrate Judge Kimberly G. Altman

v.

LASZLO CSIKI,

    Defendant/Petitioner.
_____/

**REPORT AND RECOMMENDATION
TO DENY MOTION UNDER 28 U.S.C. § 2255
AND DECLINE TO ISSUE A CERTIFICATE OF APPEALABILITY**

        I.    Introduction

This is a criminal case. Defendant/Petitioner Laslo Csiki (Csiki) pleaded guilty to possession of device-making equipment, 18 U.S.C. § 1029(a)(4), and aggravated identity theft, 18 U.S.C. § 1028A. (ECF No. 59, PageID.305). He was sentenced to 54 months imprisonment. (*Id.*, PageID.306.).

Before the Court is Csiki's motion under 28 U.S.C. § 2255 to vacate, set aside, or correct sentence, arguing that his trial counsel was ineffective and the district court erred in holding a remote sentencing hearing. For the reasons that

1

follow, the undersigned RECOMMENDS that Csiki's motion be DENIED and the Court DECLINE to issue a certificate of appealability.[1]

## II. Background

The background facts are set forth in the Court of Appeals for the Sixth Circuit's opinion affirming Csiki's conviction and sentence as follows:

> In April 2019, police in Dearborn, Michigan arrested Laszlo Csiki in connection with the installation of skimming devices on local ATMs. When installed, those devices capture the card number and PIN of every card entered into the ATM. The police recovered from Csiki and his codefendant approximately $161,000 in cash that had been withdrawn from ATMs using stolen card numbers, approximately 500 gift or credit cards encoded with stolen numbers, and various materials, components, and tools necessary to make skimming devices. A federal grand jury indicted Csiki for one count of access device fraud, in violation of 18 U.S.C. § 1029(a)(1); one count of possession of device-making equipment, in violation of 18 U.S.C. § 1029(a)(4); and two counts of aggravated identity theft, in violation of 18 U.S.C. § 1028A.

*United States v. Csiki*, No. 20-1653, 2021 WL 2935360, at *1 (6th Cir. July 13,

---

[1] A prisoner who files a motion under § 2255 challenging a federal conviction is generally entitled to "a prompt hearing," at which the district court is to "determine the issues and make findings of fact and conclusions of law with respect thereto." 28 U.S.C. § 2255. However, a court may deny a motion under § 2255 "without conducting an evidentiary hearing [where] 'the motion and the files and records of the case conclusively show that [the petitioner] is entitled to no relief.'" *Cole v. United States*, No. 17-6061, 2018 WL 4372199, at *2 (6th Cir. Mar. 30, 2018) (quoting 28 U.S.C. § 2255(b)); *see also Valentine v. United States*, 488 F.3d 325, 333 (6th Cir. 2007). Because, as will be explained, the record conclusively shows that Csiki is not entitled to relief, the undersigned submits that a hearing is not necessary. Moreover, on December 29, 2021, prior to the referral to the undersigned, the district court entered a notice of determination of motion without oral argument, notifying Csiki that the district court intended to decide the motion without oral argument. (ECF No. 99, PageID.753).

2021).

Csiki then returned to the district court and filed a motion seeking compassionate release under 18 U.S.C. § 3582(c)(1)(A) because of the COVID-19 pandemic. The motion was denied as was a subsequent motion for reconsideration. (ECF Nos. 88, 90). Csiki appealed. The Sixth Circuit affirmed. *United States v. Csiki*, No. 21-2671, 2022 WL 2388434 (6th Cir. Mar. 29, 2022).

### III.   Legal Standard

28 U.S.C. § 2255 provides:

> A prisoner in custody under a sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence imposed was in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such a sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside, or correct the sentence.

28 U.S.C. § 2255(a).

As "[§] 2255 is not a substitute for a direct appeal," *Regalado v. United States*, 334 F.3d 520, 528 (6th Cir. 2003) (citing *United States v. Frady*, 456 U.S. 152, 167-68 (1982)), "a prisoner must clear a significantly higher hurdle than would exist on direct appeal" to merit collateral relief, *Frady*, 456 U.S. at 166. "A prisoner seeking relief under 28 U.S.C. § 2255 must allege either: (1) an error of constitutional magnitude; (2) a sentence imposed outside the statutory limits; or (3)

3

an error of fact or law that was so fundamental as to render the entire proceeding invalid." *Short v. United States*, 471 F.3d 686, 691 (6th Cir. 2006) (citation and internal quotation marks omitted). Though non-constitutional errors are generally outside the scope of § 2255 relief, *see United States v. Cofield*, 233 F.3d 405, 407 (6th Cir. 2000), a petitioner can prevail on a § 2255 motion alleging non-constitutional error by establishing "a fundamental defect which inherently results in a complete miscarriage of justice, or, an error so egregious that it amounts to a violation of due process," *Watson v. United States*, 165 F.3d 486, 488 (6th Cir. 1999) (internal quotation marks omitted) (quoting *United States v. Ferguson*, 918 F.2d 627, 630 (6th Cir. 1990)). Accordingly, alleged sentencing errors, including the proper application of the guidelines, "do[] not warrant collateral relief under § 2255 absent a complete miscarriage of justice." *Jones v. United States*, 178 F.3d 790, 796 (6th Cir. 1999).

Finally, it is well established that "[a] § 2255 motion may not be used to relitigate an issue that was raised on appeal absent highly exceptional circumstances." *Dupont v. United States*, 76 F.3d 108, 110-11 (6th Cir. 1996). A § 2255 motion is not a substitute for a direct appeal. "[N]onconstitutional claims that could have been raised on appeal, but were not, may not be asserted in collateral proceedings." *Stone v. Powell*, 428 U.S. 465, 477 n.10 (1976).

"Defendants must assert their claims in the ordinary course of trial and direct appeal." *Grant v. United States*, 72 F.3d 503, 506 (6th Cir. 1996).

With this standard in mind, the undersigned will examine Csiki's claims in turn below.

## IV. Analysis (Ineffective Assistance of Counsel)

### A. Legal Standard

It is well-established that Csiki's allegations of ineffective assistance of counsel may be raised for the first time in a § 2255 motion.[2] *Massaro v. United States*, 538 U.S. 500, 508–09 (2003). To establish ineffective assistance of counsel under the Sixth Amendment, Csiki must satisfy the two-prong test set forth in

---

[2] Csiki argued on direct appeal that both his lawyers were ineffective, and urged the Sixth Circuit to consider his claims, arguing that the record was fully developed on his claims. Although the Sixth Circuit expressly declined to address the claims of ineffectiveness, it did observe that:

> the record here includes none of Csiki's communications with his lawyers. Nothing in the record, for example, corroborates Csiki's allegation that [Loren] Dickstein coerced him to enter the plea agreement. Meanwhile, Csiki denied under oath that anyone had forced or threatened him into a guilty plea. And we "have no way of knowing" why [Sanford] Plotkin decided not to challenge the plea agreement on the grounds of coercion or whether that decision was erroneous. *Massaro v. United States*, 538 U.S. 500, 505, 123 S.Ct. 1690, 155 L.Ed.2d 714 (2003).

*United States v. Csiki*, No. 20-1653, 2021 WL 2935360, at *2 (6th Cir. July 13, 2021). In this collateral proceeding, Csiki has offered no additional evidence to enhance the record to support his claims.

*Strickland v. Washington*, 466 U.S. 668 (1984). Csiki must first show that his counsel's performance was deficient, which "requires a showing that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed by the Sixth Amendment." *Id*. at 687. A court must afford defense attorneys "wide latitude" and, in analyzing their conduct under the Sixth Amendment, must make "every effort" to "eliminate the distorting effects of hindsight, to reconstruct the circumstances of counsel's challenged conduct, and to evaluate the conduct from counsel's perspective at the time." *Id*. at 689. Defense counsel are entitled to a "strong presumption" that they " 'made all significant decisions in the exercise of reasonable professional judgment.' " *Cullen v. Pinholster*, 563 U.S. 170, 196 (2011) (quoting *Strickland*, 466 U.S. at 690).

If Csiki succeeds in proving deficient performance, he must next show that the deficient performance was prejudicial. Prejudice requires more than "some conceivable effect on the outcome of the proceeding," Csiki must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." *Strickland*, 466 U.S. at 693-94.

6

B.      Application

1.      Plea Hearing

Csiki first contends that his initial trial counsel, Loren Dickstein (Dickstein),³ was ineffective during the plea proceedings which lead to a "coerced" plea. Csiki says this is evidenced by the fact that the plea agreement was signed "two days prior to the issuance of the superseding indictment," and two days after Csiki's brother died. (ECF No. 97, PageID.741).⁴

There is a "strong presumption that attorneys 'render [ ] adequate assistance and ma[k]e all significant decisions in the exercise of reasonable professional judgment.' " *Pough v. United States*, 442 F.3d 959, 966 (6th Cir. 2006) (quoting *Strickland*, 466 U.S. at 690). A defendant challenging his attorney's conduct during plea bargaining " 'must show that counsel did not attempt to learn the facts

---

³ After the plea hearing and before sentencing, Dickstein filed a Motion to Withdraw as Retained Counsel and for Adjournment of Sentencing Dates, citing a breakdown in the relationship. (ECF No. 48). Following a hearing, the district court granted the motion and ordered counsel be appointed to represent Csiki. (ECF No. 53). Counsel was then appointed who represented Csiki at sentencing.
⁴ Csiki made a similar argument to the district court in a *pro se* "Sentencing Memorandum Supplement" that he filed prior to sentencing. In that filing, which the district court struck as improper because Csiki was represented by counsel, alleged that that Dickstein "took advantage of [Csiki's] vulnerable state of mind by bringing [him] a Ple [sic] Agreement that [he] signed just to get [Dickstein] out of [his] face because [he] was dealing with the death of [his] only one brother." (ECF No. 55, PageID.289).

of the case and failed to make a good-faith estimate of a likely sentence.' " *Pough*, 442 F.3d at 966 (quoting *United States v. Cieslowski*, 410 F.3d 353, 358–59 (7th Cir. 2005)).

"Where, as here, a defendant is represented by counsel during the plea process and enters his plea upon the advice of counsel, the voluntariness of the plea depends on whether counsel's advice 'was within the range of competence demanded of attorneys in criminal cases.' " *Hill v. Lockhart*, 474 U.S. 52, 56 (1985) (quoting *McMann v. Richardson*, 397 U.S. 759, 771 (1970)). To prove counsel was ineffective in this context, Csiki must demonstrate deficient performance by showing that his attorney's advice was not within the range of competency demanded and demonstrate prejudice by showing that there is "a reasonable probability that, but for counsel's errors, he would not have pleaded guilty and would have insisted on going to trial." *Hill*, 474 U.S. at 56-59.

The transcript of the plea hearing belies any claims of coercion by Dickstein. The district court carefully and thoroughly questioned Csiki about Dickstein's advice and performance. Portions of the transcript are set forth below:

> COURT: Have you talked about this case completely with your attorney, Mr. Dickstein?
>
> CSIKI: Yes.
>
> COURT: Have you listened carefully to his advice and his analysis?
>
> CSIKI: Yes, I did.

8

> COURT: The decision to plead guilty has to be yours. This is on your shoulders. This is not your attorney's decision to make. He can advise you, he can urge you in one direction or another, but you need to make the decision if this is going to be a proper plea of guilty. Is this, in fact, your decision?
>
> CSIKI: Yes, it is my decision.

(Plea Tr., ECF No. 77, PageID.491).

The district court also asked Dickstein about the process of reviewing the plea agreement with Csiki:

> COURT: And you went over the agreement with your client as it was being negotiated?
>
> DICKSTEIN: Multiple occasions.
>
> COURT: And you answered all of his questions?
>
> DICKSTEIN: I did.
>
> COURT: Tried to ensure that he understood the agreement before he signed it; is that correct?
>
> DICKSTEIN: That's correct.
>
> COURT: And you had ample time to do all of that?
>
> DICKSTEIN: Yes, your Honor.

(*Id.*, PageID.502–03).

The district court then asked Csiki questions about Dickstein's representation and the voluntariness of Csiki's plea:

> COURT: Mr. Csiki, is all of that correctly stated?

9

CSIKI: Yes, your Honor.

COURT: You understand the agreement?

CSIKI: Yes, your Honor.

COURT: You know what it means for you?

CSIKI: Yes.

COURT: Your attorney has advised you?

CSIKI: Yes, your Honor.

COURT: And you've had plenty of time to think about this; am I correct?

CSIKI: Yes, your Honor.

COURT: Has anyone tried to force you or threaten you to try to get you to plead guilty, Mr. Csiki?

CSIKI: No, your Honor.

COURT: Has anyone done anything that you think is improper or out of line in order to persuade you to plead guilty?

CSIKI: No, your Honor.

COURT: And the promises or commitments in the Rule 11 agreement have been properly stated? There's nothing else, no secret deal, no under-the-table deal, so to speak, that is persuading you to plead guilty? Things that I have not heard or stated?

CSIKI: No, your Honor.

COURT: So everything is on the table. I have heard an accurate rendition here; am I correct about that?

>CSIKI: Yes, your Honor.
>
>COURT: You're satisfied with your attorney; is that correct?
>
>CSIKI: Yes, your Honor.
>
>COURT: Has he done what you would hope an attorney should do in order to prepare you for this decision?
>
>CSIKI: Yes, your Honor.

(*Id.*, PageID.503–04).

The transcript makes clear that Csiki was satisfied with Dickstein's representation and there is no hint of any coercion in Csiki's decision to plead guilty. It was Csiki's decision alone. Further, Csiki does not allege that the advice that Dickstein provided to him was wrong, or that the guidelines calculation was faulty. Nor does he argue that he would have proceeded to trial. The timing of his brother's death and the return of the superseding indictment simply do not show that Dickstein coerced Csiki into pleading guilty. Therefore, Csiki has not shown that he is entitled to relief on this ground.

2. Withdraw Plea

Csiki also says that Sanford Plotkin, his counsel at sentencing, *see* n.3 *supra*, was ineffective for failing to file a motion to withdraw his guilty plea. Withdrawal "is not an absolute right but is a matter within the broad discretion of the district court." *United States v. Kirkland*, 578 F.2d 170, 172 (6th Cir. 1978) (per curiam); *see also United States v. Spencer*, 836 F.2d 236, 238 (6th Cir. 1987). To prevail,

11

the defendant must show "a fair and just reason for requesting the withdrawal." Fed. R. Crim. P. 11(d)(2)(B).

Courts consider seven non-exclusive factors in determining whether to permit a defendant to withdraw his plea: (1) the time between the plea and the motion to withdraw; (2) the explanation for the defendant's change of heart; (3) the existence of any claim of innocence; (4) the circumstances of the guilty plea; (5) the defendant's background; (6) the defendant's experience with the criminal justice system; and (7) the prejudice to the government if the motion is granted. *United States v. Quinlan*, 473 F.3d 273, 276–77 (6th Cir. 2007).

Csiki does not address any of these factors to support his claim that Plotkin should have filed a motion to withdraw his plea. Instead, Csiki repeats his argument that the plea process was coercive because of the timing of his brother's death and therefore Plotkin should have filed a motion to withdraw his plea. As demonstrated above, the district court thoroughly examined Csiki at the plea hearing and there is no evidence that he entered the plea because he was coerced. Csiki plainly stated that no one had tried to force him or threaten him to plead guilty. He affirmed that no one said anything improper to him or tried to persuade him to plead guilty. Thus, Plotkin was not ineffective in failing to file a motion to withdraw Csiki's plea as there is no basis in the record to support such a motion.

12

Moreover, Csiki has not demonstrated that he was prejudiced by Plotkin's actions. He does not say he would have gone to trial much less shown that the outcome would have been different had he not plead guilty and proceeded to trial. Accordingly, Csiki has not shown that he is entitled to relief on this ground.

### 3. Video Sentencing

Finally, Csiki argues that he was deprived of his right to an in-person sentence because the district court did not ensure that he properly consented to a remote proceeding and Plotkin was ineffective for failing to obtain his explicit consent on the record.

Rule 43 protects a defendant's right to be present at the initial appearance, arraignment, any plea hearing, all trial stages, and sentencing. Fed. R. Crim. P. 43(a). This right can be waived under Rule 43(c), but physical presence is ordinarily thought to be important to the proper functioning of the criminal justice system. *See e.g.*, *United States v. Benabe*, 654 F.3d 753, 768 (7th Cir. 2011) (discussing competing concerns when a defendant waives his right to presence at trial). Physical presence at sentencing may also provide the defendant with the best opportunity to argue mitigation during allocution, another right with deep roots in the common law. *See Green v. United States*, 365 U.S. 301, 304 (1961) (noting that the common law right of allocution was recognized as early as 1689); Fed. R. Crim. P. 32(i)(4)(A)(ii) (providing right of allocution).

During the COVID-19 pandemic, however, Congress has authorized federal judges to impose sentence by video teleconference under certain circumstances. Coronavirus Aid, Relief, and Economic Security (CARES) Act, Pub. L. No. 116–136, §§ 15002(b)(2)(A), (b)(4), 134 Stat. 281, 528–29 (2020).

The CARES Act creates an exception to the in-person appearance requirement where: (1) the Judicial Conference finds an emergency; (2) the Chief Judge of the District finds that in-person hearings would seriously jeopardize public health and safety; (3) the defendant consents to proceeding by video teleconference after consulting with counsel; and (4) the district court makes specific findings that "the plea or sentencing in that case cannot be further delayed without serious harm to the interests of justice." CARES Act, § 15002(b)(2)(A).

Here, Csiki's sentencing attorney (Plotkin) signed a joint submission requesting sentencing via video teleconference. (ECF No. 58, PageID.301–04). Plotkin also stated on the record at the start of the hearing that he had discussed the procedure with Csiki, and that Csiki consented. (ECF No. 75, PageID.437). Csiki did not contradict his attorney's statement or object to the remote nature of the proceeding at any time.[5] The record thus shows that Csiki consented to a

---

[5] The government concedes that the fourth requirement for sentencing by video teleconference—that the district court make a finding that further delay would cause serious harm to the interests of justice—was not explicitly met here. However, the failure to make an explicit finding did not cause any prejudice

14

remote sentencing hearing. Csiki also does not provide any authority for his apparent proposition that his consent must be expressed by an oral statement from him. And at least one court has held that express oral consent of a defendant to a remote sentencing hearing is not required under Rule 43 or the CARES Act. *See United States v. Howell*, 24 F.4th 1138, 1143–44 (7th Cir. 2022). Nor does Csiki explain how he was prejudiced by having a remote sentencing hearing.

Finally, it is worth noting that Csiki raised this issue on direct appeal and the Sixth Circuit found it was waived by the Rule 11 agreement, explaining:

> Csiki also argues that he never consented to conduct his sentencing by videoconference. He further contends that the district court failed to find that he had consented. Csiki's challenge to the procedures used at his sentencing amounts to an appeal of the sentence itself. *See, e.g., United States v. Garcia-Robles*, 640 F.3d 159, 163 (6th Cir. 2011). We review de novo whether the appellate waiver in his plea agreement precludes that challenge. *See United States v. Griffin*, 854 F.3d 911, 914 (6th Cir. 2017).
>
> In the agreement here, Csiki waived the right to appeal his sentence "on any grounds" if the sentence was not greater than 54 months' imprisonment. That condition was undisputedly met. And Csiki testified at his plea hearing both that he was not coerced to enter the plea agreement and that he could not appeal a sentence that was "54 months or less." He offers no evidence to rebut those assertions now. His argument here is therefore waived.

*Csiki*, 2021 WL 2935360, at *2.

---

to Csiki, and it did not seriously affect the fairness of the proceeding. Csiki does not argue or explain how this procedural error violated his constitutional rights which is required to prevail under § 2255.

15

Thus, even assuming Csiki may properly assert this claim on collateral review, he has not shown any error by either the district court or his sentencing attorney as to his consent to proceed to sentencing over video sufficient to obtain relief under § 2255.

## V. Certificate of Appealability

Under 28 U.S.C. § 2253(c)(1), the district court is required to evaluate the appealability of its decision denying a § 2255 motion and to issue a certificate of appealability (COA) "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2); *see also* Fed. R. App. P. 22(b). No § 2255 movant may appeal without this certificate. The COA must indicate the specific issue or issues that satisfy the required showing. 28 U.S.C. § 2253(c)(2), (3). A "substantial showing" is made when the movant demonstrates that "reasonable jurists could debate whether (or, for that matter, agree that) the petition should have been resolved in a different manner or that the issues presented were adequate to deserve encouragement to proceed further." *Miller-El v. Cockrell*, 537 U.S. 322, 336 (2003) (citation and internal quotation marks omitted); *see also Henley v. Bell*, 308 F. App'x 989, 990 (6th Cir. 2009) (per curiam) (same). Issuance of a COA does not require a showing that the appeal will succeed. *Miller-El*, 537 U.S. at 337; *Caldwell v. Lewis*, 414 F. App'x 809, 814-15

(6th Cir. 2011).  Courts should not issue a COA as a matter of course.  *Bradley v. Birkett*, 156 F. App'x 771, 773 (6th Cir. 2005) (citing *Miller-El*, 537 U.S. at 337).

As explained above, Csiki's claims lack substantive merit.  Therefore, he cannot present a question of some substance about which reasonable jurists could differ.  Thus, Csiki is not entitled to a certificate of appealability.

VI.   Conclusion

For the reasons stated above, it is RECOMMENDED that Csiki's motion under § 2255 be DENIED and the Court DECLINE to issue a certificate of appealability.

Dated: September 21, 2022                                            s/Kimberly G. Altman
Detroit, Michigan                                                             KIMBERLY G. ALTMAN
                                                                                          United States Magistrate Judge

**NOTICE TO PARTIES REGARDING OBJECTIONS**

The parties to this action may object to and seek review of this Report and Recommendation.  Any objections must be filed within 14 days of service, as provided for in Federal Rule of Civil Procedure 72(b)(2) and Local Rule 72.1(d).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140, 144 (1985); *Howard v. Sec'y of Health &*

*Human Servs.*, 932 F.2d 505, 508 (6th Cir. 1991). Filing objections that raise some issues but fail to raise others with specificity will not preserve all the objections a party might have to this Report and Recommendation. *Willis v. Sec'y of Health & Human Servs.*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers, Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Under Local Rule 72.1(d)(2), any objections must be served on this Magistrate Judge.

Any objections must be labeled as "Objection No. 1," "Objection No. 2," etc. Any objection must recite precisely the provision of this Report and Recommendation to which it pertains. Not later than 14 days after service of an objection, the opposing party may file a concise response proportionate to the objections in length and complexity. Fed. R. Civ. P. 72(b)(2); E.D. Mich. LR 72.1(d). The response must specifically address each issue raised in the objections, in the same order, and labeled as "Response to Objection No. 1," "Response to Objection No. 2," etc. If the court determines that any objections are without merit, it may rule without awaiting the response.

## CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing document was served upon counsel of record and any unrepresented parties via the Court's ECF System to their respective email or First Class U.S. mail addresses disclosed on the Notice of Electronic Filing on September 21, 2022.

s/Carolyn Ciesla<br>
CAROLYN CIESLA<br>
Case Manager

19